Opinión disidente emitida por el
Juez Asociado Señor Rebollo López.
Hace más de un cuarto de siglo, en Pueblo v. Lebrón, 108 D.P.R. 324, 327-328 (1979), este Tribtmal expresó, respecto a las disposiciones del Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, que
... el temor al crimen y el natural deseo de combatirlo no deben oscurecer el propósito central de la disposición. Libremos el lenguaje original de su glosa abultada. La garantía contra los registros y allanamientos irrazonables representa la voluntad de negarles a los gobiernos mejor intencionados, en aras *204 de una libertad individual preciada, medios eficaces y aun aparentemente indispensables para lograr objetivos meritorios. Se estructuró precisamente ese derecho para proteger al ciudadano aun de los gobiernos democráticos más escrupulosos. Amsterdam, Perspectives on the Fourth Amendment, 58 Minn. L. Rev. 349, 353 (1974). Por bueno que sea el guardián, siempre existe el problema de quién lo vigila. Quis custodiet custodiem. Cuando se descuidan los medios, cuando se disminuyen los derechos fundamentales a nombre de un ansiado orden, lo que viene a perecer al cabo es la libertad y con ella la democracia que se quiso defender. Véase: McNabb v. United States, 318 U.S. 332, 347 (1943) (Frankfurter). (Énfasis suplido.)
Dichas sabias —y hermosas— palabras cobran hoy mayor importancia y relevancia al considerar el hecho de que la alta jerarquía de la Policía de Puerto Rico recientemente ha requerido de sus miembros la obtención y el diligenciamiento de las cuotas mensuales de las órdenes de registros y allanamientos.
Aparte de la consternación que en nuestro ánimo causa dicha absurda e impropia acción, nos preguntamos cuántos humildes hogares puertorriqueños serán —ilegal e irrazonablemente— ultrajados o violados durante los meses venideros. El transcurso del tiempo, seguramente, nos dará la contestación a dicha penosa interrogante. En ello, precisamente, radica la importancia de la controversia planteada en el recurso hoy ante nuestra consideración.
Debe señalarse que la referida controversia ya fue resuelta por este Tribunal en 1989 en Pueblo v. Rivera Rodríguez, 123 D.P.R. 467 (1989), mediante una opinión mayoritaria emitida por el entonces Juez Asociado de este Tribunal —hoy Juez Presidente— honorable Federico Hernández Denton.
En dicha ocasión, disentimos vehementemente de la posición asumida por una mayoría de los miembros que entonces integraban la plantilla de este Tribunal. Hoy, creyendo firmemente que nuestra posición es la correcta y con la esperanza de que los nuevos integrantes del Tribunal corrigieran el error entonces cometido, decidimos plasmar nuestra posición nuevamente por escrito, aun cuando en esta ocasión, utilizando fundamentos distintos. Vana esperanza.
*205 I
La controversia ante nuestra consideración no es complicada: ¿es válida una orden de registro y allanamiento expedida por un magistrado, cuando esté fundada en una declaración que fue juramentada anteriormente ante un fiscal del Departamento de Justicia y no ante el magistrado que expidió dicha orden?
En Pueblo v. Rivera Rodríguez, ante, este Tribunal resolvió dicha interrogante en la afirmativa. A nuestro juicio, dicha decisión mayoritaria es completamente errónea en derecho, ya que viola las disposiciones del Art. II, Sec. 10 de nuestra Consitución, ante, y, en particular, de las específicas y mandatorias disposiciones de la Regla 231 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, lo cual constituye una clara violación del debido procedimiento de ley.
II
Nuestra Constitución, en el Art. II, Sec. 10 de su Carta de Derechos, ante, establece:
No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
No se interceptará la comunicación telefónica.
Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
Evidencia obtenida en violación de esta sección será inadmisible en los tribunales. (Enfasis suplido.) Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, págs. 327-328.
Al momento de redactarse esta disposición constitucional quedó plasmado en el Diario de Sesiones de la Convención Constituyente el interés de que nuestra Carta de Derechos no cumpliera en forma mínima con los requisitos impuestos por la Ley Núm. 600, sino que, por el contrario, se tratara de una de las cartas de derechos más liberales, *206 más generosas y más auténticamente democráticas del mundo.
Es así como se llega a la conclusión de que
\f\a inviolabilidad de la persona se extiende a todo lo qne es necesario para el desarrollo y expresión de la misma. El hogar, los muebles y utensilios, los libros y papeles poseídos por un ciudadano son como una prolongación de su persona, pues constituyen el ámbito en que ésta se ha hecho y se mantiene. Toda intromisión sin su permiso en ese círculo privado equivale para todo hombre a una violación de su personalidad .... La lesión de la intimidad es en este sentido el más penoso ataque a los derechos fundamentales de la persona. (Enfasis suplido.) 4 Diario de Sesiones de la Convención Constituyente 2567 (1951).
Conscientes, sin embargo, los miembros de la Convención Constituyente de que en toda democracia hay personas que no están en la disposición de respetar las leyes que se aprueban en beneficio de todos, lo que causa una “confrontación” entre el interés común y el estrictamente personal, los constituyentes claramente establecieron que la inviolabilidad de esos derechos personales fundamentales tendría su límite en la conducta criminal de los ciudadanos. En consecuencia, tomaron las providencias para que ese pueblo democrático pudiera combatir efectivamente la conducta criminal de algunos de sus ciudadanos. Entre otros, se proveyó para la expedición de las órdenes de arresto y de registro y allanamiento. Ahora bien, se estableció como salvaguarda que dichas órdenes únicamente procederían en Derecho cuando mediara, a juicio de un magistrado, “causa probable” para expedirlas.
Del debate referente a la transcrita Sec. 10 se desprende con meridiana claridad que la intención de la Asamblea Constituyente fue que se concediera el poder de expedir esas órdenes de arresto y de registro y allanamiento, con carácter de exclusividad, a la autoridad judicial, privándose expresamente de esa facultad a los fiscales y, ciertamente y con mayor razón, a los miembros de la Policía de Puerto Rico.
*207 A través de nuestra historia, como máximo garantizador de los derechos de nuestros conciudadanos, este Tribunal ha expresado, en términos generales, que para garantizar el cumplimiento del mandato constitucional contra registros y allanamientos ilegales e irrazonables
... se interpuso la figura independiente e imparcial del juez entre los agentes del orden público y los ciudadanos. ... Corresponde al magistrado hacer el delicado balance entre los derechos del ciudadano y las necesidades del Estado de investigar agresivamente los delitos cometidos. Pueblo v. Malavé González, 120 D.P.R. 470, 474 (1988).(1)
En Pueblo v. Martínez Torres, 120 D.P.R. 496, 500-501 (1988), afirmamos que la citada disposición constitucional
... tiene tres (3) objetivos básicos: “proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión ...”. ... Al enfrentarnos a este dilema [del conflicto entre el interés público en combatir la criminalidad y los derechos individuales] debemos tener presente y ser conscientes de que en el menoscabo de las garantías constitucionales ...no está la verdadera solución al problema de la criminalidad. Debe tenerse particular cuidado para que a través del proceso adjudicativo de controversias no se ocasione una lamentable erosión de los derechos garantizados por nuestra Constitución. (Enfasis suplido.)
III
En este caso, la declaración escrita en la cual se fundamentó la orden de registro y allanamiento expedida por el magistrado no fue juramentada ante éste y sí, con anterioridad a la expedición de la orden, ante un fiscal del Departamento de Justicia. Ello, en clara violación a las expresas *208 disposiciones de la Regla 231 de Procedimiento Criminal, ante, la cual establece-.
No se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla. Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro, librará la orden en la cual se nombrarán o describirán con particularidad la persona o el lugar a ser registrado y las cosas o propiedad a ocuparse. La orden expresará los fundamentos habidos para expedirla, y los nombres de las personas en cuyas declaraciones juradas se basare. Ordenará al funcionario a quien fuere dirigida registre inmediatamente a la persona o sitio que en ella se indique, en busca de la propiedad especificada, y devuelva al magistrado la orden diligenciada, junto con la propiedad ocupada. La orden dispondrá que será cumplimentada durante las horas del día, a menos que el magistrado, por razones de necesidad y urgencia, dispusiere que se cumplimente a cualquier hora del día o de la noche. (Énfasis suplido.)
El tribunal de instancia determinó —actuación que fue confirmada por el Tribunal de Apelaciones— que dicha actuación es válida en Derecho. Una mayoría de los integrantes de este Tribunal, erróneamente, a nuestro juicio, hoy avala dicha actuación al negarse a expedir el recurso presentado en solicitud de revisión de la referida determinación.
Expediríamos. Ello en vista de que somos del criterio que dicha actuación es ilegal por ser —repetimos— contraria a, y violatoria de, las expresas y específicas disposiciones de la Regla 231 de Procedimiento Criminal, ante, lo cual significa que la actuación en controversia viola la cláusula constitucional sobre el debido procedimiento de ley. Veamos.
IV
El citado Art. II, Sec. 10 de nuestra Constitución —al establecer que sólo “se expedirán mandamientos autori *209 zando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación” (Const. E.L.A., ante, pág. 311)— establece la norma general sustantiva que rige esta materia en nuestra jurisdicción. La Regla 231 de Procedimiento Criminal, ante, por otro lado, al implementor dicha norma general, regula o establece el procedimiento específico que el Estado está en la obligación de seguir en la obtención de una orden de registro y allanamiento.
Dicho de otra manera, al establecer o requerir la Regla 231 de Procedimiento Criminal, ante —de manera expresa y específica— que no “se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla” (énfasis suplido), y que si “de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro” (énfasis suplido), se establece un procedimiento específico que le concede un derecho a la persona que resulta acusada de la comisión de delito como consecuencia de la expedición de dicha orden de registro y allanamiento; derecho que, una vez concedido, el Estado está obligado a respetar —y los tribunales de justicia obligados a exigir— ya que la violación de éste constituye una violación del debido proceso de ley.
Así, clara y específicamente, lo ha resuelto este Tribunal en innumerables ocasiones en relación con otros aspectos del procedimiento criminal. Dicho en palabras sencillas, la norma a los efectos de que, una vez ciertos derechos son incorporados al procedimiento criminal éstos se convierten en parte integral del debido proceso de ley y, por lo tanto, adquieren una categoría cuasi constitucional, es tan sólida y arraigada en nuestra jurisdicción que, realmente, no cabe discusión al respecto. Véanse: Pueblo v. Serbiá, 78 D.P.R. 788 (1955); Pueblo v. Prieto Maysonet, 103 D.P.R. 102 (1974); Pueblo v. Ortiz Couvertier, 132 D.P.R. 883 (1993); Pueblo v. Vega, 148 D.P.R. 980 (1999).
*210 Es más, y con el propósito de que nadie pueda tener duda alguna sobre la corrección de la posición que sustentamos, este Tribunal ha resuelto, “como normativa de derecho administrativo, que una vez una agencia ha promulgado unos reglamentos para facilitar su proceso decisional y limitar el alcance de su discreción, viene obligada a observarlos estrictamente y no queda a su soberana voluntad reconocer o no los derechos que ella misma le ha extendido a sus empleados”. (Enfasis suplido.) García Cabán v. U.P.R., 120 D.P.R. 167, 175 (1987).(2)
Si ello es así en el campo de lo civil administrativo, ¿cómo es posible que este Tribunal haya resuelto, y se reitere en ello, que en el campo de lo criminal el Estado puede decidir —acorde con “su soberana voluntad”— si cumple o no con los requisitos, o derechos, que establece o le reconoce la Regla 231 de Procedimiento Criminal, ante, a un imputado de delito?
Dicho con respeto, por más esfuerzo que realizamos, realmente no lo alcanzamos a comprender. Es por ello que disentimos.

 Refiriéndose al proceso de la expedición de órdenes de allanamiento, nos señala el profesor LaFave lo siguiente: “.. .‘interposes an orderly procedure’ involving ‘judicial impartiality’ whereby ‘a neutral and detached magistrate’ can make ‘informed and deliberate determinations’ on the issue of probable cause.” (Énfasis suplido y escolios omitidos.) 1 LaFave, Search and Seizure: A Treatise on the Fourth Amendment 2d, pág. 548 (1987).

 Véase, además, Berríos v. Comisión de Minería, 102 D.P.R. 228, 230 esc. 2 (1974), donde se indicó que una “vez provisto por estatuto el recurso de apelación, tanto en lo administrativo como en la litigación civil, es parte del debido proceso de ley”. (Énfasis suplido.)