EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>vs.<br><br>Moisés Figueroa Agosto<br>Luis Delgado Colón<br><br>Peticionarios | Certiorari<br><br>2007 TSPR 93<br><br>171 DPR _____ |

Número del Caso: CC-2007-218

Fecha: 17 de mayo de 2007

Tribunal de Apelaciones:

        Región Judicial Arecibo Panel VIII

Juez Ponente:

        Hon. José Miranda De Hostos

Abogados de la Parte Peticionaria:

        Lcdo. César E. Cerezo Torres
        Lcdo. José M. De León Pérez

Materia: Art. 401 (3 cargos) y Art. 412 Sustancias Controladas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                  CC-2007-218     CERTIORARI

Moisés Figueroa Agosto
Luis Delgado Colón

    Peticionarios

RESOLUCIÓN

San Juan, Puerto Rico, a 17 de mayo de 2007

Examinada la solicitud de *certiorari*, presentada por la parte peticionaria, se provee no ha lugar.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión disidente. El Juez Asociado señor Rivera Pérez expediría y disiente sin opinión escrita del no ha lugar provisto.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Recurrido

        vs.                  CC-2007-218     CERTIORARI

Moisés Figueroa Agosto
Luis Delgado Colón

    Peticionarios


OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO REBOLLO LÓPEZ

San Juan, Puerto Rico, a 17 de mayo de 2007


Hace más de un cuarto de siglo, en <u>Pueblo</u> v. <u>Lebrón</u>, 108 D.P.R. 324, 327-328 (1979), este Tribunal expresó, respecto a las disposiciones de la Sección 10 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, que:

> ... el temor al crimen y el natural deseo de combatirlo no debe oscurecer el propósito central de la disposición. Libremos el lenguaje original de su glosa abultada. La garantía contra los registros y allanamientos irrazonables representa la voluntad de negarles a los gobiernos mejor intencionados, en aras de una libertad individual preciada, medios eficaces y aun aparentemente indispensables para lograr objetivos meritorios. <u>Se estructuró precisamente ese derecho para proteger al ciudadano aun de los gobiernos democráticos más escrupulosos</u>. Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn. L.

Rev. 349, 353 81974). <u>Por bueno que sea el guardián, siempre existe el problema de quién lo vigila</u>. *Quis custodiet custodiem. Cuando se descuidan los medios, cuando se disminuyen los derechos fundamentales a nombre de un ansiado orden, lo que viene a perecer al cabo es la libertad y con ella la democracia que se quiso defender.* Véase: *McNabb v. United States,* 318 U.S. 332, 347 (1943) (Frankfurter). (Énfasis suplido.)

Dichas sabias --y hermosas- palabras cobran hoy mayor importancia y relevancia al considerar el hecho de que la alta jerarquía de la Policía de Puerto Rico recientemente ha requerido de sus miembros la obtención, y diligenciamiento, de cuotas mensuales de órdenes de registros y allanamientos.

Aparte de la consternación que en nuestro ánimo causa dicha absurda e impropia acción, nos preguntamos cuántos humildes hogares puertorriqueños serán --ilegal e irrazonablemente-- ultrajados o violados durante los meses venideros. El transcurso del tiempo, seguramente, nos dará la contestación a dicha penosa interrogante. En ello, <u>precisamente</u>, radica la importancia de la controversia planteada en el recurso hoy ante nuestra consideración.

Debe señalarse que la referida controversia ya fue resuelta por este Tribunal en el año 1989 en <u>Pueblo</u> v. <u>Rivera Rodríguez</u>, 123 D.P.R. 467, mediante una Opinión mayoritaria emitida por el entonces Juez Asociado de este Tribunal --hoy, Juez Presidente-- Hon. Federico Hernández Denton.

En dicha ocasión, disentimos vehementemente de la posición asumida por una mayoría de los miembros que entonces integraban la plantilla de este Tribunal. Hoy, creyendo firmemente que nuestra posición es la correcta y con la esperanza de que los nuevos integrantes del Tribunal corrigieran el error entonces cometido, decidimos plasmar nuestra posición nuevamente por escrito, aun cuando en esta ocasión, utilizando fundamentos distintos. Vana esperanza.

## II

La controversia ante nuestra consideración no es complicada: ¿es válida una orden de registro y allanamiento expedida por un magistrado, cuando la misma esté fundada en una declaración que fue juramentada anteriormente ante un fiscal del Departamento de Justicia y no ante el magistrado que expidió dicha orden?

En Pueblo v. Rivera Rodríguez, ante, este Tribunal resolvió dicha interrogante en la afirmativa. A nuestro juicio, dicha decisión mayoritaria es completamente errónea en derecho ya que la misma es violatoria de las disposiciones de la Sección 10 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico y, en particular, de las específicas y mandatorias disposiciones de la Regla 231 de Procedimiento Criminal, lo cual constituye una clara violación del debido procedimiento de ley.

III

Nuestra Constitución, en el Artículo II, Sección 10, de su Carta de Derechos establece:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> No se interceptará la comunicación telefónica.
>
> *Sólo* se expedirán mandamientos autorizando registros, allanamientos o arrestos *por autoridad judicial,* y ello *únicamente cuando exista causa probable apoyada en juramento o afirmación,* describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
>
> *Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.*

Al momento de redactarse esta disposición constitucional quedó plasmado en el Diario de Sesiones de la Convención Constituyente el <u>interés</u> de que nuestra Carta de Derechos <u>no</u> fuera una que cumpliera en forma mínima con los requisitos impuestos por la Ley Núm. 600, sino que, por el contrario, se tratara de una de las cartas de derechos más liberales, más generosas y más auténticamente democráticas del mundo.

Es así como se llega a la conclusión de que:

> *La inviolabilidad de la persona* se extiende a todo lo que es necesario para el desarrollo y expresión de la misma. *El hogar*, los muebles y utensilios, los libros y papeles poseídos por un ciudadano *son como una prolongación de su persona*, pues constituyen el ámbito en que ésta se ha hecho y se mantiene. Toda intromisión sin su permiso en ese círculo privado equivale para todo hombre a una violación de su personalidad ... *La lesión de la intimidad es en este sentido*

*el más penoso ataque a los derechos fundamentales de la persona.* (Énfasis suplido.)

Conscientes, sin embargo, los miembros de la Convención Constituyente de que en toda democracia hay personas que no están en disposición de respetar las leyes que se aprueban en beneficio de todos, lo que causa una "confrontación" entre el interés común y el estrictamente personal, los Constituyentes claramente establecieron que la inviolabilidad de esos derechos personales fundamentales tendría su limite en la conducta criminal de los ciudadanos. En consecuencia, tomaron providencias para que ese pueblo democrático pudiera combatir efectivamente la conducta criminal de algunos de sus ciudadanos. Entre otros, se proveyó para la expedición de órdenes de arresto y de registro y allanamiento. Ahora bien, se estableció como salvaguarda que dichas órdenes únicamente serían procedentes en derecho cuando mediara, *a juicio de un magistrado*, "causa probable" para expedir las mismas.

Del debate referente a la transcrita Sec. 10 se desprende con meridiana claridad que la intención de la Asamblea Constituyente fue que se concediera el poder de expedir esas órdenes de arresto y de registro y allanamiento, *con carácter de exclusividad*, a la autoridad judicial, privándose expresamente de esa facultad a los fiscales y, ciertamente y con mayor razón, a los miembros de la Policía de Puerto Rico.

A través de nuestra historia como máximo garantizador de los derechos de nuestros conciudadanos, este Tribunal ha expresado, en términos generales, que a los fines de garantizar el cumplimiento del mandato constitucional contra registros y allanamientos ilegales e irrazonables "se interpuso la figura independiente e imparcial del juez entre los agentes del orden público y los ciudadanos... Corresponde al magistrado hacer el delicado balance entre los derechos del ciudadano y las necesidades del Estado de investigar agresivamente los delitos cometidos." Pueblo v. Malavé González, 120 D.P.R. 470, 474 (1988).[1]

En Pueblo v. Martínez Torres, 120 D.P.R. 496, 500-501 (1988), afirmamos que la citada disposición constitucional "tiene tres (3) objetivos básicos: 'proteger  la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e *interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión ...*' ... Al enfrentarnos a este dilema [del conflicto entre el interés público en combatir la criminalidad y los derechos individuales] *debemos tener presente y ser conscientes de*

---

[1] Refiriéndose al proceso de expedición de órdenes de allanamiento, nos señala el profesor LaFave que el mismo "'interposes an orderly procedure' involving 'judicial impartiality' whereby 'a neutral and detached magistrate' can make '*informed and deliberate determinations*' on the issue of probable cause". (Énfasis suplido y escolios omitidos.) W.L. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 1, pág. 548.

*que en el menoscabo de las garantías constitucionales ...* *no está la verdadera solución al problema de la criminalidad.* Debe tenerse particular cuidado para que a través del proceso adjudicativo de controversias no se ocasione una *lamentable erosión* de los derechos garantizados por nuestra Constitución". (Énfasis suplido.)

IV

En el presente caso, la declaración escrita en la cual se basó la orden de registro y allanamiento expedida por el magistrado <u>no</u> fue juramentada ante éste y sí, <u>con anterioridad a la expedición de la orden</u>, ante un fiscal del Departamento de Justicia. <u>Ello en clara violación a las expresas disposiciones de la Regla 231 de Procedimiento Criminal</u>, la cual establece:

> No se librará orden de allanamiento o registro <u>*sino en virtud de declaración escrita*</u>, <u>*prestada ante un magistrado bajo* juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla.</u> *Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro*, librará la orden en la cual se nombrarán o describirán con particularidad la persona o el lugar a ser registrado y las cosas o propiedad a ocuparse. La orden expresará los fundamentos habidos para expedirla, y los nombres de las personas en cuyas declaraciones juradas se basare. Ordenará al funcionario a quien fuere dirigida registre inmediatamente a la persona o sitio que en ella se indique, en busca de la propiedad especificada, y devuelva al magistrado la orden diligenciada, junto con la propiedad ocupada. La orden dispondrá que será cumplimentada durante las horas del día, a menos que el magistrado, por razones de necesidad y urgencia, dispusiere que

se cumplimente a cualquier hora del día o de la noche. (Énfasis suplido.)

El tribunal de instancia determinó --actuación que fue confirmada por el Tribunal de Apelaciones-- que dicha actuación es una válida en derecho. Una mayoría de los integrantes de este Tribunal, erróneamente, a nuestro juicio, en el día de hoy <u>avala</u> dicha actuación al <u>negarse</u> a expedir el recurso radicado en solicitud de revisión de la referida determinación.

<u>Expediríamos</u>. Ello en vista de que somos del criterio <u>que dicha actuación es una ilegal por ser la misma -- repetimos-- contraria a, y violatoria de, las expresas y específicas disposiciones de la Regla 231 de Procedimiento Criminal, lo cual significa que la actuación en controversia viola la cláusula constitucional sobre debido procedimiento de ley</u>. Veamos.


V

La Sección 10 del Artículo II de nuestra Constitución --al establecer que sólo "se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, ..."-- establece la <u>norma general sustantiva</u> que rige esta materia en nuestra jurisdicción. La <u>Regla 231</u> de Procedimiento Criminal, por otro lado, <u>al implementar dicha norma general, regula o establece el procedimiento específico que</u>

el Estado viene en la obligación de seguir en la obtención de una orden de registro y allanamiento.

Dicho de otra manera, al establecer o requerir la Regla 231 de Procedimiento Criminal --de manera expresa y específica-- que no "se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla ...", y que si "...de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro, ...", se establece un procedimiento específico que le concede un derecho a la persona que resulta acusada de la comisión de delito como consecuencia de la expedición de dicha orden de registro y allanamiento; derecho que, una vez concedido, el Estado viene en la obligación de respetar --y los tribunales de justicia vienen en la obligación de exigir-- ya que la violación del mismo constituye una violación del debido proceso de ley.

Así, clara y específicamente, lo ha resuelto este Tribunal en innumerables ocasiones en relación con otros aspectos del procedimiento criminal. Dicho en palabras sencillas, la norma a los efectos de que, una vez ciertos derechos son incorporados al procedimiento criminal, éstos se convierten en parte integral del debido proceso de ley, y por lo tanto adquieren una categoría *cuasi-constitucional*, es una tan sólida y arraigada en nuestra

jurisdicción que, realmente, no cabe discusión al respecto. Véase: <u>Pueblo</u> v. <u>Serbiá Bonilla</u>, 78 D.P.R. 788 (1955); <u>Pueblo</u> v. <u>Prieto Maysonet</u>, 103 D.P.R. 102 (1974); <u>Pueblo</u> v. <u>Ortiz Couvertier</u>, 132 D.P.R. 883 (1993); <u>Pueblo</u> v. <u>Vega Rosario y otros</u>, 148 D.P.R. 980 (1999).

Es más, y con el propósito de que nadie pueda tener duda alguna sobre la corrección de la posición que sustentamos, este Tribunal ha resuelto que, "...como <u>normativa de derecho administrativo</u>, una vez una <u>agencia</u> ha <u>promulgado</u> unos <u>reglamentos</u> para facilitar su proceso decisional y <u>limitar</u> el alcance de su discreción, <u>viene obligada a observarlos estrictamente y no queda a su soberana voluntad reconocer o no los derechos que ella misma le ha extendido a sus empleados</u>." Véase: <u>García Cabán y otros</u> v. <u>U.P.R.</u>, 120 D.P.R. 167 (1987).[2]

Si ello es así en el campo de lo civil administrativo, ¿cómo es posible que este Tribunal haya resuelto, y se reitere en ello, que en el <u>campo de lo criminal</u> el Estado puede decidir --acorde con "su soberana voluntad"-- si cumple o no con los requisitos, o derechos, que establece o le reconoce la Regla 231 de Procedimiento Criminal a un imputado de delito?

---

[2] Véase, además, <u>Berríos Rodríguez</u> v. <u>Comisión de Minería</u>, 102 D.P.R. 228 (1974), a los efectos de que una "...vez provisto por estatuto el recurso de apelación, <u>tanto en lo administrativo como en la litigación civil</u>, es parte del debido proceso de ley ...".

Dicho con respeto, por más esfuerzo que realizamos, realmente no lo alcanzamos a comprender. Es por ello que disentimos.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado